UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:12-cv-22663-UU

LYLLE ARAYA-SOLORZANO,

    Plaintiff,

v.

GOVERNMENT OF THE REPUBLIC
OF NICARAGUA, *et al.*,

    Defendant.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:12-cv-23600-UU

ROBERTO B. SOLORZANO

    Plaintiff,

v.

GOVERNMENT OF THE REPUBLIC
OF NICARAGUA,

    Defendant

## ORDER ON MOTION TO VACATE AND DISMISS

THIS CAUSE is before the Court upon Defendants' Motions to Vacate Default Judgment and Dismiss Complaint. D.E. 70; 71. Plaintiff filed Responses in Opposition.[1] D.E. 87; 88. Defendants' filed a joint Reply in Support of the Motions. D.E. 91. The parties made substantially identical filings in both cases. Both Motions are considered together in this Order.

---

[1] The Court accepted three separate filings, D.E. 85, 86, 87, as Plaintiff's Response in the *Araya-Solorzano* action, even though not all of these were timely filed. *See* D.E. 97 (paperless order). The Court then struck certain further filings, D.E. 92, 93, first because they were filed far beyond the deadline for a Response, and second because they were filed in response to Defendant's Reply. *See* D.E. 98 (paperless order). Sur-replies such as these are not allowed. As stated in the Local Rule 7.1(c), after a defendant has filed its Reply brief: "No further or additional memoranda of law shall be filed without prior leave of Court. All materials in support of any motion, response, or reply, including affidavits and declarations, shall be served with the filing."

THE COURT has reviewed the pertinent portions of the record and is otherwise fully advised in the premises. Having finally appeared in this action, Defendants move to vacate the default judgments entered against them and to dismiss the actions with prejudice. Defendants argue: (1) that service of process was ineffective, and that the Court therefore lacked personal jurisdiction over them; and (2) that the Court lacks subject-matter jurisdiction over the actions because these claims do not come within one of the exceptions set forth in the Foreign Sovereign Immunities Act ("FSIA"). While the effectiveness of service upon Defendants is technically a threshold issue, the Court's ruling – assuming that it were to accept Defendants' position – would not dispose of the actions with prejudice. For the reasons set forth in this Order, however, the Court agrees with Defendants' that it lacks subject-matter jurisdiction under the FSIA, and therefore need not address the service-of-process issue.

## I. BACKGROUND

### A. Procedural Posture of the Lylle Araya-Solorzano Action

Plaintiff Lylle Araya-Solorzano filed a Complaint, D.E. 1, against Defendants Government of the Republic of Nicaragua ("Nicaragua") and the Instituto Nicaraguense de Seguridad Social ("INSS") on July 19, 2012, stating claims for breach of contract and unjust enrichment. Ms. Araya-Solorzano's suit also asserted a count against the Secretary of State of the United States for injunctive relief, but on October 23, 2012, the Court entered an Order, D.E. 26, granting the Secretary's motion to dismiss.[2]

On November 16, 2012, the Court issued an Order to Show Cause, D.E. 23, asking Plaintiff why she had not yet served Nicaragua and the INSS in accordance with 28 U.S.C. § 1608, as specified by Federal Rule of Civil Procedure 4(j)(1). In response, D.E. 25, Plaintiff represented that she was presently in the process of filing the summons for the foreign

---

[2] This Court held that it lacked subject-matter jurisdiction over that claim because it raised a nonjusticiable political question.

Defendants together with all documents and translations that the statute requires for the Clerk of Court to serve process on the Head of the Ministry of Foreign Affairs of Nicaragua. *Id.* ¶ 5. On November 27, 2012, the Clerk of Court filed a Notice of International Service for the INSS, D.E. 31, and for Nicaragua, D.E. 32. The 21-day responsive pleading period expired without a responsive pleading from Defendants, and on January 30, 2013, Plaintiff moved for Clerk's Entry of Default against Defendants. D.E. 35. The Clerk issued a Non-Entry of Default because Plaintiff had not attached proof that the summons had been returned executed. D.E. 37. Plaintiff filed a Second Motion for Clerk's Entry of Default, D.E. 39, and on February 1, 2013, the Clerk entered defaults against Defendants, D.E. 40.

### B. Procedural Posture of the Roberto B. Solorzano Action

On November 2, 2012, Roberto B. Solorzano filed a Complaint, D.E. 1, that was originally assigned to the Honorable Judge Cecilia B. Altonaga. The suit brought claims against Defendants Nicaragua and the INSS for breach of contract and unjust enrichment. It also requested injunctive relief in a count brought against the Secretary of Commerce of the United States. On November 19, 2012, Plaintiff moved for the appointment of a special process server to effectuate serve process on Defendants. D.E. 11. The Deputy Clerk of Court granted Plaintiff's Motion and appointed the individual Plaintiff had requested to serve as special process server. D.E. 12. On November 27, 2012, the Clerk filed a Notice of International Service for both Nicaragua, D.E. 13, and the INSS, D.E. 14. Plaintiff filed a Status Report, D.E. 19, apprising Judge Altonaga that service of process had been made and attached proof thereof.

On January 28, 2013, the Secretary of Commerce filed a Notice of Pendency of Other Action, D.E. 21, informing Judge Altonaga of the related action brought by Ms. Araya-Solorzano then pending before this Court. On February 1, 2013, Judge Altonaga entered an Order transferring the case to this Court. D.E. 25. The next day, Plaintiff filed an affidavit of service on Defendants, D.E. 26, and moved for the entry of clerk's default, D.E. 27. The Clerk entered defaults against Nicaragua and the INSS on February 4, 2013. D.E. 29. On February 6, 2013,

3

Plaintiff voluntarily dismissed his claim against the Secretary of Commerce. D.E. 30.

### C. Damages Trial and Underlying Dispute

This Court issued a consolidated Amended Trial Order in both Ms. Araya-Solorzano's action, D.E. 53, and Mr. Solorzano's action, D.E. 39. The Order called for a consolidated trial on damages *only*, to be held on March 21, 2013. Also, despite the defaults, the Court required Plaintiffs to notify Defendants of the trial so that they could appear and defend against the claims. Plaintiffs filed Proposed Findings of Fact and Conclusions of Law in their respective cases, along with all exhibits and testimony they wished to enter into evidence.

The Court then held the trial as scheduled. Defendants failed to appear and defend. At the conclusion of the trial, the Court entered its Findings of Fact and Conclusions of Law – on the merits – in both Ms. Araya-Solorzano's case, D.E. 60, and Mr. Solorzano's case, D.E. 45. Below is a summary of the underlying disputes based on the Court's Findings of Fact and Conclusions of Law in both cases.[3]

Plaintiffs, Lylle Araya-Solorzano and Roberto B. Solorzano, are both United States Citizens. Ms. Araya-Solorzano, along with other members of the Solorzano family, jointly owned an undivided eighty percent share of a Nicaraguan corporation called Laboratorios SOLKA, S.A. ("SOLKA"), a Nicaraguan pharmaceutical company. She represents the family members' combined interest in SOLKA. Mr. Solorzano is the owner of the trademark called "Laboratorios SOLKA" ("SOLKA Trademark"). Mr. Solorzano negotiated with Defendants on his own behalf with respect to the SOLKA Trademark, as well as on behalf of Ms. Araya-Solorzano and the Solorzano family with respect to the family's shares in SOLKA.

On May 15, 2007, SOLKA's unionized workers took physical control of the SOLKA facilities and turned them over to Defendant, Government of the Republic of Nicaragua ("Nicaragua"). Since then, Nicaragua has controlled and used SOLKA's premises. The

---

[3] The summary is a composite of the Findings in *Solorzano*, No. 12-cv-23600, D.E. 45, and *Araya-Solorzano*, No. 12-22663, D.E. 60. Citations have been omitted here for the sake of clarity, but citations to the respective records may be found in the Findings themselves.

Solorzano family, with Mr. Solorzano acting as agent for the family, initiated direct negotiations with the INSS for the sale of Shares of Stock in SOLKA and for the sale of certain trademarks related to SOLKA.

Mr. Solorzano received an offer of settlement on September 29, 2008 from Defendant INSS, an autonomous agency of the Nicaraguan government responsible for Nicaragua's social security administration. The offer was for one of SOLKA's trademarks, in the amount of $1,300,000, and for all Shares of Stock in SOLKA owned by the Solorzano family, in the amount of $4,000,000. Mr. Solorzano, for himself and for the Solorzano family, accepted the INSS offer without any modification in a letter he presented to INSS on October 14, 2008. This offer and acceptance evince the creation of a contract between Plaintiffs and Defendants. However, Defendants breached the agreement by failing to pay any part of the agreed-upon prices. Accordingly, the Court found that Defendants were liable to Plaintiffs for breach of contract and unjust enrichment.

The Court awarded Mr. Solorzano damages for the unpaid contract price of $1,300,000 and applied prejudgment interest from the date payment became due — the date of acceptance of the offer — to the date of entry of Final Judgment. At a simple monthly interest rate of 1.5% for the 55 months between the time of acceptance and the entry of Final Judgment, the total prejudgment interest due was $1,072,500. The total amount of principal plus interest due was $2,732,500. Mr. Solorzano was also awarded damages for unjust enrichment in the amount of $3,500,000 for the unauthorized use by Defendants of the remaining 75 trademarks related to the SOLKA Trademark, but the Court did not award prejudgment interest on this figure since it did not represent a commercial obligation due on a date certain.

The Court awarded Ms. Araya-Solorzano damages for the unpaid contract price of $4,000,000 and applied prejudgment interest from the date payment became due—the date of acceptance of the offer — to the date of entry of Final Judgment. At a simple monthly interest rate of 1.5% for the 55 months between the time of acceptance and the entry of final judgment,

the total prejudgment interest due was $3,300,000. The total amount of principal plus interest due was $7,300,000. Ms. Araya-Solorzano was also awarded damages for unjust enrichment in the amount of $1,000,000 for the unauthorized use by Nicaragua of the SOLKA facilities without compensation to the Solorzano family, but the Court did not award prejudgment interest on this figure since it did not represent a commercial obligation due on a date certain.

## II. Legal Standard

### A. Rule 60 Motion

Upon a properly filed motion, a court may relieve a party from a final judgment where the judgment is found to be void. Fed. R. Civ. P. 60(b)(4). A motion under Rule 60(b) "must be made within a reasonable time," Fed. R. Civ. P. 60(c)(1). The motion must be made within one year of the complained-of judgment if the grounds for the motion are (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; or (3) fraud, misrepresentation, or misconduct by an opposing party. *Id.* However, there is no such time restriction where the motion claims that the judgment is void or has been satisfied, released, or discharged. *Id.*

### B. Jurisdictional Challenge

Under Rule 12(b)(1), a party may assert the defense that the court lacks subject-matter jurisdiction over a claim. The Court of Appeals for the Eleventh Circuit has held that challenges to subject-matter jurisdiction under Rule 12(b)(1) come in two forms: a "facial" challenge and a "factual" challenge. *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s PA*, 104 F.3d 1256, 1260-61 (11th Cir. 1997). In response to a facial challenge, the court merely determines whether the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion, meaning that the court must consider the allegations of the complaint to be true. But when the attack is factual, the trial court may proceed as it never could under Rule 12(b)(6) or Rule 56. In particular, a factual attack challenges the existence of subject matter jurisdiction irrespective of the pleadings, and therefore matters outside the pleadings, such as testimony and affidavits, are

6

considered.

Because at issue in a factual attack is the trial court's jurisdiction – its very power to hear the case – there is substantial authority for the trial court to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1528-9 (11th Cir. 1990) (internal quotations and citations omitted). And when a party challenges the Complaint for lack of subject matter jurisdiction, the district court has the authority to resolve factual disputes, along with the discretion to devise a method for making a determination. *Odyssey Marine Exploration, Inc. v. Unidentified Shipwrecked Vessel*, 657 F. 3d 1159, 1170 (11th Cir. 2011).

### III. DISCUSSION

Defendants asserts that this Court lacks personal jurisdiction over them, and subject-matter jurisdiction over these disputes. Their claim of improper service, while technically a threshold issue, is based on defects that Plaintiff could cure, were the Court to agree with Defendants' argument that service was ineffective in the first place. However, Defendants' challenge under the Foreign Sovereign Immunities Act constitutes a facial attack on the exercise of personal *and* subject-matter jurisdiction that is dispositive of this action and cannot be cured.

The Foreign Sovereign Immunities Act ("FSIA") "provides the sole basis for obtaining jurisdiction over a foreign state in [United States courts]." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434, (1989). Under that Act, a foreign state is presumptively immune from the jurisdiction of United States courts unless one of the enumerated statutory exceptions applies. *Id.* The dispositive question presented by these Motions is whether Plaintiff's dispute with Nicaragua and the INSS falls within one of the specified exceptions of the FSIA, thereby providing the necessary jurisdiction. In this case, the parties dispute only whether the so-called "commercial activity" exception applies. It "is [the foreign sovereign's]

burden to demonstrate the lack of subject-matter jurisdiction." *Guevara v. Republic of Peru*, 608 F.3d 1297 (11th Cir. 2010). After careful consideration, the Court finds that Defendant have satisfied their burden of showing that this exception does not apply, and that it therefore lacks subject matter jurisdiction. Accordingly, the Court will dismiss the complaints with prejudice and will vacate the judgments.

### A. Inapplicability of the commercial activity exception

Under the Foreign Sovereign Immunities Act, a foreign state is immune from the jurisdiction of the courts of the United States, with certain exceptions. 28 U.S.C. § 1605; *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480 (1983). When the specified exceptions apply, "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606. The exception relevant to this case is found in 28 U.S.C. § 1605(a), which states:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case … (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

In these proceedings, Plaintiffs have relied only on the third clause of § 1605(a)(2) to establish jurisdiction, as it is uncontested that the acts in question took place outside the territory of the United States. Consequently, the Court limits its analysis to whether the actions are based on acts outside the United States in connection with a commercial activity of the Nicaraguan government that has caused direct effects in the United States. 28 U.S.C. § 1605(a)(2).

Plaintiffs argue that their alleged injuries result from purely commercial activity. Defendants counter that the dispute is, at root, one involving a sovereign act by the Government of Nicaragua. However, we need not reach the question of whether, under the facts presented, Defendants' conduct constitutes acts "in connection with a commercial activity of the foreign state," because, in any event, these acts have not caused "a direct effect in the United States,"

8

within the meaning of the FSIA. *See Samco Global Arms v. Arita*, 395 F.3d 1212, 1217 (11th Cir. 2005) (declining to reach the question of whether underlying conduct was commercial activity, given the court's holding that there were no direct effects on the United States).

A "direct effect" under the FSIA is one that "follow[s] 'as an immediate consequence of the defendant's activity.'" *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 618, (1992) (holding that a "direct effect" need not satisfy "substantiality" and "foreseeability" tests). In *Weltover*, the Supreme Court held that Argentina's unilateral action of rescheduling maturity dates on their bonds had a direct effect in the United States because New York was the "place of performance for Argentina's ultimate contractual obligation, and the rescheduling of those obligations necessarily [had] a 'direct effect' in the United States." *Id.* at 619.

However, where the transaction giving rise to a commercial dispute takes place in a foreign country, an injury to the economic interests of a U.S. resident or corporation does not, in and of itself, constitute a direct effect on the United States. *See Samco Global Arms, Inc. v. Arita*, 395 F.3d 1212, 1217 (11th Cir. 2005) (holding that plaintiff's alleged U.S.-based injuries – including inability to ship arms to the United States, expenditures in attempting to have armaments released, lost profits from future sales, and harm to business reputation – were too indirect and speculative to constitute "direct effects," where defendant had no obligation to perform in the United States). Failure to make payment within the United States does not satisfy the direct-effects test. *See Guevara*, 608 F.3d 1297, 1310 (11th Cir. 2010); *cf. Odhiambo v. Republic of Kenya*, No. 12-0441, 2013 WL 2367804, at *9 (D.D.C. May 30, 2013) (stating that the jurisdictional analysis is not altered by plaintiff's having received payments from defendant while plaintiff was in the United States). This is especially true where the contract sued upon makes "no reference whatsoever to the United States." *Id.* at 1218.

In Plaintiffs' Responses to these Motions, they argue that the financial loss they continue to suffer while residing in the United States is sufficient to establish that Defendants' activity had direct effects in this country. But, as in *Samco*, the contracts at issue here make no reference to

9

the United States, and both the offeror and offeree were based in Nicaragua at the time of the offer and acceptance.  The letters' author, Mr. Solorzano, now resides in the United States, but he listed a Nicaragua address for himself at the time of said correspondence.  Moreover, the affidavits submitted by Plaintiffs' expert avers that "the obligation was to be paid in Nicaragua." D.E. 57, at 16; D.E. 41, at 16.  Plaintiffs may not change their position now, and even if they were to do so, it would be legally irrelevant, for the reasons already discussed herein.  Plaintiffs' injury, while felt where they reside, does not overcome Defendants' immunity.  To hold otherwise would mean that any party aggrieved by the commercial conduct of a foreign sovereign could establish jurisdiction in the United States simply by establishing a residence here within the applicable limitations period.

      For the foregoing reasons, the Court will dismiss the complaint with prejudice and vacate the judgment.  Accordingly it is

      ORDERED AND ADJUDGED that in Case No. 12-cv-23600, the Motion, D.E. 54, is GRANTED: the Final Judgment, D.E. 46, is VACATED, and the Complaint, D.E. 1, is DISMISSED.  It is further

      ORDERED AND ADJUDGED that in Case No. 12-cv-22663, the Motions, D.E. 70, 71, are GRANTED: the Final Judgment, D.E. 61, is VACATED, and the Complaint, D.E. 1, is DISMISSED.

      DONE AND ORDERED in Chambers at Miami, Florida, this 11th day of June, 2013.

                                              /s/ Ursula Ungaro
                                  URSULA UNGARO
                                  UNITED STATES DISTRICT JUDGE

copies provided: counsel of record